UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STEVEN ZINNEL,<br><br>　　　　　Defendant and<br>　　　　　Judgment Debtor,<br><br>TD AMERITRADE CLEARING, INC.<br><br>　　　　　Garnishee. | 5:25-mc-00030-CBK<br><br>**MEMORANDUM OPINION**<br>**AND ORDER** |
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>STEVEN ZINNEL,<br><br>　　　　　Defendant and<br>　　　　　Judgment Debtor,<br><br>Michael Brumbaugh,<br><br>　　　　　Trustee of the Castana<br>　　　　　Trust, Garnishee. | 5:25-mc-00031-CBK |

　　The government filed applications for writs of continuing garnishment in these cases seeking to collect criminal fines and restitution arising out of a judgment against Steven Zinnel in the United States District Court for the Eastern District of California, 2:11-cr-00234-TLN. Following a jury trial, on July 16, 2013, Zinnel was convicted of two counts of bankruptcy fraud, eight counts of money laundering, three counts of transactions in criminally derived property, and engaging in a money laundering conspiracy. He was sentenced on March 4, 2014, to a total term of 212 months

imprisonment. He was ordered to pay a special assessment of $1,500.00 and a fine of $500,000.00. Interest was waived as to the fine. Restitution was deferred.

Following a restitution hearing, the government and the defendant stipulated to the imposition of restitution to ten different individuals and entities. On May 30, 2014, the district judge entered an amended judgment of restitution in the amount of $2,513,319.00. Interest was not waived on restitution.

## BACKGROUND

An indictment and superseding indictment were filed in the Central District of California in 2011 alleging that between 2001 and 2005, Zinnel, who was in a contentious divorce proceeding, and Derian Eidson[1], an attorney who Zinnel referred to as his "life partner" in subsequent proceedings, fraudulently transferred and concealed, in contemplation of bankruptcy, Zinnel's property and property of one or more of the corporations he controlled. It was alleged that defendants conspired to set up shell corporations and to transfer in excess of $1 million from his controlled corporations to corporations that did not mention Zinnel's interest in any public filings. Zinnel filed a *pro se* voluntary petition for Chapter 7 bankruptcy in the Eastern District of California on July 20, 2005.

The Bankruptcy Trustee filed the final account on April 9, 2008. The Final Decree was entered June 5, 2008. The bankruptcy case was reopened in June 2011, pursuant to motion of the trustee eight days after the filing of the criminal indictment.

In the indictments, the government sought forfeiture of certain property. During the pretrial proceedings, the government filed two bills of particulars setting forth additional property sought to be forfeited. Following the jury's verdicts, the government moved for an order of forfeiture as to (1) a vacant lot known as "The Luyung Property"

---

[1] Derian Eidson was convicted of money laundering and conspiracy to commit money laundering. The jury found her not guilty on one count of bankruptcy fraud but did not reach a verdict as to another count of bankruptcy fraud, three counts of money laundering, or the two counts of transactions in criminally derived property. She was sentenced on April 16, 2014, to a total sentence of 121 months. On appeal the United States Court of Appeals for the Ninth Circuit remanded for resentencing because the district judge did not address all of the sentencing factors – he did not explain why the 121-month sentence for one count was "sufficient but not greater than necessary" compared the 120 month sentence on the other count. United States v. Zinnel, 725 F. App'x 453, *18 (9th Cir. 2018). She was resentenced on April 4, 2019, to a total term of 108 months imprisonment.

2

located in Rancho Cordova, California; (2) real property located in Gold River, California; (3) all right, title, and interest in dummy corporation Done Deal, Inc.; and (4) all right, title, and interest in a partnership, System 3, Inc., in which Zinnel had concealed his interest. The government also sought a personal forfeiture money judgment against Zinnel in the amount of $1,297,158.20. On September 20, 2013, two months after the guilty verdicts were entered, the district court issued a preliminary order of forfeiture finding that the property sought to be forfeited constitutes or was derived from proceeds traceable to violation of federal laws. The district court ordered that any net proceeds from the forfeiture of the real property located in Gold River, California should be applied to reduce the personal forfeiture money judgment. The district court authorized the Attorney General to seize the property and that it should be held in the custody and control of the Internal Revenue Service. The Bankruptcy Trustee filed in the criminal case a petition for forfeiture of the Luyung Property, the Gold River property, and defendant's interest in Done Deal, Inc. to the bankruptcy trustee. That petition was withdrawn two months later, in January 2014.

Zinnel sought to stay forfeiture pending his appeal. The government opposed the motion, stating that Zinnel's "motion to stay forfeiture seeks to further extend the period during which those assets will be unavailable to liquidate and use to make his victims(s) whole." The government urged that delaying forfeiture would increase the costs of maintaining the real property, decreasing the "pool of assets from which the victims can be reimbursed." "Delaying forfeiture 'will only prolong the ability of [Defendant's] victims to receive distributions . . . and would only serve to further harm [them].' See United States v. Davis, No. 07-cr-011, 2009 WL 2475340, at *3 (D. Conn. June 15, 2009). Simply put, the sooner the properties are sold, the better off Zinnel's victims will be." The motion to stay forfeiture was denied.

As set forth above sentencing was held on March 4, 2014. Zinnel filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit from his conviction and sentence, the final order of forfeiture, and the restitution order, none of which had been filed in writing at that time. The written judgment was entered March 24, 2014.

3

The written amended judgment including the restitution order was entered on May 30, 2014.

On May 21, 2014, the government and Zinnel entered into a stipulation to amend the preliminary order of forfeiture to include substitute property, that is, absent any superior claims, $65,534.85 seized from Zinnel's First Bank Account and $53,362.51 seized from Best Build's Wells Fargo Bank account, which were seized in in November 2013, by the Internal Revenue Service, shall be used to partially satisfy the forfeiture money judgment entered against defendant Zinnel. The parties further stipulated that, absent any superior claims, the assets of Best Build, Inc., including any uncashed checks belonging to the company, should be seized, sold, and forfeited to the United States and credited to Zinnel's forfeiture money judgment. The records in the bankruptcy case show that the Trustee sought, in October of 2011, to sell the bankruptcy estate and Zinnel's interest in System 3, Inc., previously included in the government's notice of forfeiture. That motion was granted. Zinnel thereafter began challenging the order and filing appeals to the Ninth Circuit Bankruptcy Appellate Panel. The Panel resolved the appeals in 2015. It appears that the government abandoned any claim of forfeiture of Zinnel's interest in System 3, Inc. due to the litigation surrounding that asset in bankruptcy court. On May 23, 2014, the district court entered an order approving the stipulation to amend the preliminary order of forfeiture.

The government and CitiMortgage, Inc., entered into a stipulation on June 4, 2014, agreeing that the forfeiture of the Gold River, California property is subject to the payment of the interest CitiMortgage has in the property and agreeing to compromise and settle that interest. The stipulation requested the entry of a final order of forfeiture ordering that Zinnel shall forfeit (1) a vacant lot known as "The Luyung Property" located in Rancho Cordova, California; (2) real property located in Gold River, California; (3) all right, title, and interest in dummy corporation Done Deal, Inc.; (4) a sub *res* in the amount of $2,800,000.00 in lieu of all right, title, and interest in System 3, Inc.; and (5) a personal forfeiture money judgment in the amount of $1,297,158.20. The following day the district court approved the parties' stipulated terms

4

On January 28, 2015, the government applied for a final order of forfeiture regarding the substitute property, that is, the money seized from the bank accounts set forth in the May 21, 2014, stipulation, along with all right, title, and interest in dummy corporation Done Deal, Inc. and including three cashier's checks made payable to Best Build in the amount of $47,250.00, $11,812.50, and $47,250.00.

The final order of forfeiture was entered in the criminal case on February 3, 2015. The final order provided for the forfeiture of Zinnel's interest in (1) $65,534.85 seized from Zinnel's First Bank account; (2) $53,362.51 seized from Zinnel's Wells Fargo account; and (3) the assets of Best Build, Inc., including three cashier's checks in the amount of $47,250.00, $11,812.50, and $47,250.00. The forfeited property was vested in the name of the United States of America, with the Internal Revenue Service maintaining custody and control of the property until its disposal. The final order of forfeiture provided that "the above-listed property shall be credited towards the $1,297,158.20 restitution money judgment entered against Zinnel on June 5, 2014.

The United States Court of Appeals for the Ninth Circuit affirmed Zinnel's convictions but reversed and remanded for re-sentencing as the district court committed procedural error when the district court interrupted Zinnel's allocution which deterred his allocution. United States v. Zinnel, 725 F. App'x 453 (9th Cir. Feb. 9, 2018). Resentencing was scheduled for February 7, 2019, but, consistent with his actions throughout the criminal and bankruptcy cases, Zinnel filed motions, appeals, and a motion for a writ of mandamus to the Ninth Circuit, delaying re-sentencing to May 2, 2019. During the first day of the hearing Zinnel sought to further delay sentencing, even filing a notice of appeal in open court, which the trial court deemed frivolous.

Following a three-day re-sentencing hearing, the second amended judgment issued on May 16, 2019. Zinnel was sentenced to a total sentence of 152 months, a five-year reduction from the prior term of 212 months and a 36-month downward variance from the guideline range. The district court reimposed a $1,500.00 special assessment, a fine of $500,000.00, and restitution in the amount of $2,513,319.00. Zinnel appealed his

sentence and term of supervised release. The Ninth Circuit held that the district court did not commit procedural error, the sentence was not substantively unreasonable, but that two conditions of supervised release are unconstitutionally vague. United States v. Zinnel, 859 F. App'x 149 (9th Cir. 2021). The Ninth Circuit vacated those conditions and remanded for modification of the conditions. The Ninth Circuit further vacated a condition that prevented Zinnel from having contact with a person convicted of a felony because it prohibited him from contacting his "life partner," which was imposed to protect the public from further crimes. The district judge found that "Zinnel and his life partner's crimes were driven by animosity towards Zinnel's ex-wife," but the Ninth Circuit determined that "Zinnel's divorce will be long finalized by the time of his release" and "more explanation is needed to ensure that the condition is 'no greater deprivation of liberty than is reasonably necessary.'" United States v. Zinnel, 859 F. App'x at 151. A third amended judgment entered on October 21, 2021, deleting the condition.

Zinnel continued to litigate the criminal case in both the district court and the Ninth Circuit through March 21, 2024, when the Ninth Circuit affirmed the district court's order denying Zinnel's motion to compel production of documents produced pursuant to subpoenas served in 2019, 2020, and 2021 in the civil garnishment actions.

On April 2, 2021, the government filed an application for a writ of continuing garnishment in the Eastern District of California. The government sought to garnish Zinnel's interest in any property in the possession, custody, or control of TD Ameritrade Clearing, Inc. The government contended that Zinnel had paid a portion of the $3,014,819.00 judgment but still owed $3,014,294.00. The $525.00 difference represented the total amount of funds that had been deducted from Zinnel's prisoner trust account by the B.O.P at that time. The government sought to recover a 10% litigation surcharge in the amount of $301,429.40, resulting in a total claim of $3,315,723.40. **This case was transferred to the District of South Dakota, 5:25-mc-00030-CBK in October 2025.**

Steven Zinnel's brother, David Zinnel filed a third-party claim. Steven Zinnel, who was then incarcerated in a federal prison in Oregon, filed a claim of exemption, a

request to transfer the garnishment proceeding to the District of Oregon, an objection to the litigation surcharge, a motion to dismiss for lack jurisdiction and lack of service of process upon him, as well as many other motions. Zinnel asserted that the judgment was not valid, that the government had taken assets in excess of the judgment and owed him money, that the matter should be stayed pending resolution of the criminal appeal, and that the government attorneys lied and should be admonished, along with many other claims. Zinnel proffered an email dated September 21, 2016, from an Assistant United States Attorney addressed to Zinnel's attorney and several other members of the Department of Justice setting forth an accounting of the moneys received from the forfeiture of assets, the total forfeited being $3,149,604.14. Recall that $1,297,158.20 of that amount was required to be applied to the personal restitution judgment against Zinnel. The government thus only acquired $1,852,445.94 in excess from forfeiture.

On July 20, 2021, a magistrate judge issued findings and recommendations on the pending motions. The magistrate noted that Zinnel claims the TD Ameritrade account is exempt, that he does not owe the money, and that he did not receive proper notice of the garnishment action. The magistrate also noted that, in the following 73 days, Zinnel filed 22 motions, along with other documents, many of which were duplicative and attempted to relitigate issues settled by prior court orders. The magistrate set forth the law as to the separate and distinct remedies of forfeiture and the criminal monetary penalties – the special assessment, fine, and restitution. The defendant was not entitled to credit towards one remedy for the proceeds of the other remedy. Finally, the magistrate found that Zinnel's claim that the TD Ameritrade account was exempt from garnishment was meritless.

The magistrate held that Zinnel had litigated the matter excessively and no reasonable mind could conclude that Zinnel was not on notice of the garnishment. In addition to the many motions filed by Zinnel, the garnishment action was also complicated by the two separate California state court probate cases involving the TD Ameritrade account and the Castana Trust.

On September 20, 2021, the district court adopted a magistrate's report and recommendation denying the motion to dismiss. Zinnel filed a notice of appeal to the Ninth Circuit. The appeal was dismissed for lack of jurisdiction on December 9, 2021.

The statute of limitations for collecting the special assessment is five years from the date of the judgment. 18 U.S.C. § 3013(c). When the statute of limitations expired in May 2019, the amount deducted from Zinnel's prisoner trust account by the B.O.P was $400.00. He thereafter did not owe the balance of the $1,500.00 special assessment.

As of January 2022, the government's accounting records show that $400.00 of the money deducted from Zinnel's prisoner trust account was applied to the special assessment, reducing the special assessment balance to zero. The remaining $983.98 deducted from Zinnel's prisoner trust account up to that time was moved from the special assessment account and applied to the restitution account. An additional $25.00 was deducted from Zinnel's prisoner trust account in May 2022 and that amount was applied in the accounting records to restitution. Zinnel thus paid a total of $1,008.98 toward restitution.

It appears from the records in this case that remission petitions were submitted and forfeited funds were used to pay some portion of restitution. In March 2022, the government began making payments from forfeited funds to victims who had filed remission petitions. Between March and May 2022, the government paid restitution from forfeited funds in the amount of $1,970,955.68. In addition, $29,307.26 was credited towards restitution as a result of payments from the bankruptcy estate. As set forth above, Zinnel made payments from his prisoner trust account towards restitution in the amount of $1,008.98. The total restitution credited to the restitution debt as of June 1, 2022, was $2,001,271.92. The remaining restitution debt was $512,047.08.

The parties engaged in a settlement conference on June 3, 2022. As a result of that conference, the parties agreed, on the record, that the maximum garnishment exposure out of the TD Ameritrade account was $513,056 in restitution, $500,000 in fine, and a litigation surcharge which the government agreed to reduce to $150,000, for a total garnishment request from the TD Ameritrade account of $1,163,056. The parties

assumed that the then balance of the TD Ameritrade account was in excess of the garnishment amount. If that was in fact the case, the parties agreed that no garnishment would go forward as to the Castana Trust. David Zinnel agreed to abandon any claim he may have had to any of the funds in the TD Ameritrade account that were needed to satisfy Steven Zinnel's criminal judgment. Zinnel agreed that everything agreed to at the settlement conference is enforceable not withstanding whether the case is ultimately transferred pursuant to Zinnel's motion to transfer.

On June 10, 2022, the government filed a request for findings and recommendations for final order of garnishment. In that document, the government contended that, as of June 7, 2022, the unpaid restitution was **$513,056.60.** The government added a footnote stating that:

> The United States Attorney General (acting through the DOJ Money Laundering and Asset Section) exercised discretion to allow some forfeited funds to pay restitution to victims who submitted remission petitions. *See* 28 C.F.R. § 9.8. Forfeited funds cannot be used to pay the $500,000 fine, and there are no other victim remission petitions pending, so no other forfeited funds are available to further reduce Debtor's balance.

The magistrate entered findings and a recommendation that the district court enter a final order of forfeiture of the TD Ameritrade account.

The records of the Bureau of Prisons show that Zinnel was released from federal custody on June 9, 2022. Zinnel thereafter notified the district court of his change of address to Aliso Viejo, California, and moved to transfer the case to the Central District of California. Zinnel objected to the findings and recommendation of the magistrate. David Zinnel filed a motion to enforce the settlement agreement and for sanctions against Steven Zinnel.

On July 11, 2022, the government filed a response to Zinnel's objections and set forth that the government's previous requested findings failed to take into account Zinnel's payments from his prisoner trust account toward restitution in the amount of $1,0008.98. On July 18, 2022, the district court adopted the findings and recommendation, overruled defendant's objections, ordered that TD Ameritrade pay to

the Clerk of Court $1,012,047.08, ordered TD Ameritrade to pay $150,000.00 to the United States Department of Justice representing a litigation surcharge, and that TD Ameritrade hold any remaining funds pending further order of the Court.

Zinnel filed a notice of appeal. No stay was entered, resulting in TD Ameritrade complying with the garnishment order. On June 9, 2025, the Ninth Circuit vacated the final order of garnishment, finding that the district court had no discretion to deny Zinnel's motion to transfer jurisdiction. On June 20, 2025, Zinnel filed a notice of change of address, stating he was then residing in Spearfish, South Dakota. On August 14, 2025, Zinnel moved to transfer the case to the District of South Dakota, which motion was granted.

On June 6, 2021, two months after the filing of the TD Ameritrade garnishment, the government filed a second application for a writ of continuing garnishment in the Eastern District of California. In the second case, the government sought to garnish Zinnel's interest in the Castana Trust, a trust that had been set up by Zinnel's mother prior to her death. At that time, Steven Zinnel's brother David Zinnel was the trustee of the Castana Trust. David Zinnel died October 14, 2022, and Michael Brumbaugh was appointed successor trustee. **This case was transferred to the District of South Dakota, 5:25-mc-00031-CBK.**

Zinnel filed many of the same motions in the second garnishment case, including motions to transfer to the District of Oregon, California, and South Dakota. On August 10, 2021, the magistrate issued findings and recommendations, noting that many of Zinnel's claims had been litigated in the related case. The magistrate found that Zinnel's objections to the garnishment were without merit and specifically found that, pursuant to the terms of the trust and the death of the settlor (Zinnel's mother), Zinnel has an ownership interest in the Castana trust which is subject to garnishment. The magistrate recommended denial of the substantive motions to quash the writ and for an evidentiary hearing.

The district court adopted the report and recommendation on October 13, 2021. Zinnel filed a notice of appeal. The Ninth Circuit dismissed the appeal for lack of jurisdiction on January 21, 2022.

As set forth above, on June 3, 2022, a settlement conference was convened with the parties and the magistrate. As part of the agreement, the parties agreed to stay the Castana Trust garnishment pending entry of an order for garnishment in the TD Ameritrade case. If the TD Ameritrade garnishment satisfied the judgment against Zinnel, the government agreed to dismiss the garnishment action against the Castana Trust.

The minutes of the settlement conference were entered into the record in the Castana Trust garnishment action. One year following the death of David Zinnel on October 14, 2022, Steven Zinnel filed notice in the Castana Trust garnishment action that he appealed, in California probate court, the appointment of successor trustee Michael Brumbaugh. Nothing transpired in the Castana Trust garnishment action until Zinnel's August 2025, notice of change of address and motion to transfer case to the District of South Dakota.

The June 3, 2022, minutes of the settlement conference were entered into the record of the TD Ameritrade garnishment case. The order granting the garnishment in the TD Ameritrade case was entered on July 18, 2022. The TD Ameritrade garnishment action was on appeal from July 2022, until June 2025, when the Ninth Circuit vacated the garnishment order and the case was transferred to the District of South Dakota.

The garnishment actions came on for hearing in the District of South Dakota on November 4, 2025. Zinnel appeared personally, testified, and offered exhibits in support of his claim that the government had acquired assets in excess of the criminal monetary penalties imposed in his criminal case. The government reasserted that the government was only claiming garnishment in an amount equal to unpaid restitution in the amount of $512,047.08 and the unpaid $500,000.00 fine. The government further requested garnishment in an amount to pay a $150,000.00 litigation surcharge. Defendant abandoned his claimed exemptions from garnishment.

The petitions for writs on continuing garnishment of the TD Ameritrade account and the Castana Trust came on for hearing on November 5, 2025

## DECISION

Since the 1990 enactment of the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§3001–3308, "[t]he federal government now enforces all non-tax related civil debts under the Act." United States v. Santee Sioux Tribe of Nebraska, 254 F.3d 728, 732 (8th Cir. 2001). Where FDCPA garnishment proceedings are instituted to collect a criminal judgment, the issues at the hearing are limited to the validity of any claim of exemption by the judgment debtor and compliance with any statutory requirement for the issuance of a writ of continuing garnishment. 28 U.S.C. § 3202(d). See, United States v. Behrens, 656 F. App'x 789, 790 (8th Cir. 2016). The party objecting to issuance of a writ of garnishment pursued pursuant to 28 U.S.C. § 3205 bears the burden of proving the claimed grounds for objection. 28 U.S.C. § 3205(c)(5).

At the hearing held in this matter, Zinnel abandoned any claim that any of the property set forth above was subject to an exemption. Zinnel continued to claim that the government had failed to provide any accounting of the total value of forfeited assets and failed to timely apply those forfeited assets to his criminal monetary penalties. Thus, Zinnel contends that the garnishment of the TD Ameritrade account should be denied. He seeks repayment of any funds from that account that were previously paid to victims of his crimes.

## ISSUES

I. **Was the Government Required to Apply all Forfeited Property to Restitution?**

Criminal forfeiture under 18 U.S.C. § 982 is authorized for money laundering, as proscribed by 18 U.S.C. § 1956 and engaging in monetary transactions in property derived from unlawful activity, as proscribed by 18 U.S.C. § 1957. 18 U.S.C. § 982(a)(1). Civil forfeiture under 18 U.S.C. § 981(a)(1)(C) is an authorized penalty for the crimes of bankruptcy fraud, as proscribed by 18 U.S.C. § 152, money laundering, as proscribed by 18 U.S.C. § 1956, and engaging in monetary transactions in property

derived from unlawful activity, as proscribed by 18 U.S.C. § 1957. 18 U.S.C. §§ 981(a)(1)(A), 981(a)(1)(C), and 1956(c)(7)(D). "Although Section 981(a)(1)(C) is a civil forfeiture provision, it is made applicable to criminal cases pursuant to 28 U.S.C. § 2461(c)." United States v. Romeo, 136 F.4th 372, 377 (2d Cir. 2025). "[F]orfeiture of property traceable to criminal proceeds is mandatory upon conviction." United States v. Cammarata, 145 F.4th 345, 381 (3d Cir. 2025). *Accord*, United States v. Gassaway, 856 F. App'x 504, 507 (5th Cir. 2021); United States v. Kennedy, 630 F. App'x 955, 956 (11th Cir. 2015); United States v. Smith, 749 F.3d 465, 488 (6th Cir. 2014); S.E.C. v. Contorinis, 743 F.3d 296, 307 (2d Cir. 2014); United States v. Carter, 742 F.3d 440, 446 (9th Cir. 2014); United States v. Williams, 720 F.3d 674, 702 (8th Cir. 2013).

The Mandatory Victim Restitution Act ("MVRA") provides that "the court shall order, in addition to . . . any other penalty authorized by law, that the defendant make restitution to the victim of the offense." 18 U.S.C. § 2663A(a)(1). "Restitution and forfeiture are authorized by different statutes and serve different purposes—one of remediating a loss, the other of disgorging a gain." United States v. Bodouva, 853 F.3d 76, 78 (2d Cir. 2017).

Criminal forfeiture is governed by the provisions of 21 U.S.C. § 853. 18 U.S.C. § 982(b)(2). The Attorney General is authorized to retain property forfeited under the civil forfeiture provisions or to transfer forfeited property, *inter alia*, as restoration to any victim of the offense. 18 U.S.C. § 981(e)(6). The Attorney General is authorized to grant petitions for remission of forfeited funds and to restore such property to victims of the offense. 21 U.S.C. §853(i). The statutes mandating restitution and forfeiture do not allow the Court to order that defendant's payments toward one must be used to offset the amount owed to the other. United States v. Arnold, 878 F.3d 940, 946 (10th Cir. 2017). The Attorney General has the sole discretion to decide whether to retain forfeited property or to apply it toward restitution owed to the victims of the defendant's offenses. United States v. Romeo, 136 F.4th 372, 381 (2d Cir. 2025); United States v. Sanjar, 876 F.3d 725, 750-51 (5th Cir. 2017), Nacchio v. United States, 824 F.3d 1370, 1380 (Fed. Cir. 2016); United States v. Joseph, 743 F.3d 1350, 1355 (11th Cir. 2014).

The law is clear and has been while the garnishment actions have been pending that the government is not required to apply the value of forfeited property to satisfy Zinnel's restitution obligations. The facts clearly show that the Attorney General did in fact engage in the remission process and exercised the discretion to apply some of the forfeited property to pay partial restitution. Zinnel was not entitled to be relieved of his entire criminal penalties once the government exercised discretion to satisfy some portion of Zinnel's restitution obligations.

The government's representations during the litigation as to the property to be forfeited did not entitle Zinnel to be entirely relieved of his obligation to pay restitution to his victims. The government did in fact apply some of the forfeited assets towards restitution. Zinnel has no right to have his entire criminal debt erased by the value of property forfeited. This Court has no right to compel the Attorney General to do so.

## II. Is the Government Entitled to Collect a Litigation Surcharge?

The provisions of the Federal Debt Collection Procedures Act provide that "the United States is entitled to recover a surcharge of 10 percent of the amount of the debt in connection withy the recovery of the debt, to cover the cost of processing and handling the litigation and enforcement under this chapter of the claim for such debt." 28 U.S.C. § 3011(a). The term "debt" includes an amount owing to the United States on account of, *inter alia*, a fine and restitution. 28 U.S.C. § 3002(3)(B).

> Of course, restitution in a criminal case is often owed to a victim who is not the United States . . . Notwithstanding, the FDCPA deems the outstanding balance on a judgment of restitution arising in a criminal case to be "an amount that is owing to the United States" for § 3002(3)(B) purposes.

United States v. Pioch, 5 F.4th 640, 643 (6th Cir. 2021). The amount of the surcharge is not based upon the amount actually recovered in the garnishment action but on the amount of the outstanding debt. Id. at 644.

The original criminal judgment setting forth Zinnel's restitution obligation was entered May 30, 2014. During the next seven years, Zinnel pursued his original direct appeal, was resentenced, pursued his second direct appeal, was resentenced, and pursued his third direct appeal. The garnishment action against the TD Ameritrade account was

instituted April 2, 2021. The garnishment action against the Castana trust was instituted on June 6, 2021. Zinnel filed notices of claimed exemptions, for a hearing, and for transfer to the district in which he was incarcerated, as he was entitled to assert. However, Zinnel excessively litigated whether he owed any restitution or a fine, frivolously contending that that the government owed him money. Had he not done so, the appeal of the denial of his motion to transfer venue would have concluded years ago, bringing a much sooner close to the garnishment actions.

Further, based upon the garnishment litigation in the Eastern District of California, Zinnel was on notice of the law concerning the difference between forfeiture and criminal penalties and the law concerning application of forfeited property to criminal penalties. Following remand from the Ninth Circuit and transfer to the District of South Dakota, Zinnel continued to frivolously assert that he did not owe a fine or restitution and that he was entitled to reimbursement from the government.

The plain language of 28 U.S.C. § 3011(a) is that the United States is "entitled" to the 10% litigation surcharge. The United States sought a post-judgment remedy of garnishment under the Act and is therefore entitled to the surcharge. Bd. of Governors of Fed. Reserve Sys. v. Pharaon, 169 F.3d 110, 114 (2d Cir. 1999). The government cited to a case from the District of South Dakota denying a litigation surcharge for equitable reasons. See United States v. Mayes, No. CIV06-4060, 2007 WL 3001670, at *1 (D.S.D. 2007). The equities do not favor the judgment debtor in this case.

At the time the garnishment actions were instituted to recover Zinnel's criminal monetary penalties, Zinnel owed in excess of $3 million. The government agreed during the course of the garnishment proceedings to accept a litigation surcharge of only $150,000.00, far below 10% of the amount owed by Zinnel at the time the garnishments were instituted.

### III. WAS ZINNEL ENTITLED TO AN ACCOUNTING?

Zinnel contends that the government failed to provide an accounting which he repeatedly requested. He contends that he is entitled to an accounting pursuant to 28 U.S.C. § 3205(c)(9)(A) and (B). Those provisions provide:

15

> (A) While a writ of garnishment is in effect under this section, the United States shall give an account on the garnishment to the judgment debtor and the garnishee.
>
> (B) Within 10 days after the garnishment terminates, the United States shall give a cumulative written accounting . . .

These sections do not require an accounting of property forfeited. Once the Court ordered forfeiture, the defendant had no further interest in the property and no right or expectation of an accounting of that property. "An accounting of amounts collected and owed under a forfeiture order is an equitable tool that a district court may employ to determine if a forfeiture judgment has been satisfied." The district court entered a money forfeiture judgment against Zinnel in addition to forfeiting certain properties. The district court also ordered that the properties forfeited should be applied to that money forfeiture judgment. The government has never claimed that the personal forfeiture judgment is due and owing. *See* United States v. Kramer, 25 F.4th 509, 513 (7th Cir. 2022) (district court may use equitable tool of accounting to determine if a forfeiture judgment has been satisfied). There is no basis in this case for an accounting of the forfeiture proceeds. In any event, the government has, throughout this litigation, provided such an accounting.

As for an accounting of the amounts garnished, that information was also available to Zinnel as a result of the garnishment litigation. Zinnel well knew the amount of his criminal debts. He knew the minimal amounts that were deducted from his prisoner trust account during his incarceration. He well knew that he owed the difference. The writ was issued July 15, 2022, for the maximum amount the government agreed was still owing for the criminal penalties and the litigation surcharge. Defendant knew as a result of the June 2022 settlement proceedings that the government was seeking to settle defendant's over $2.5 million restitution debt for 1/5th, a little over $500,000. Defendant appealed the final order. The final order was vacated. The writ of garnishment was never final due to defendant's appeal. Zinnel was not denied an accounting.

## SUMMARY

Steven Zinnel was ordered to pay restitution in the amount of $2,513,219.00, a $500,000.00 fine, and a $1,500.00 special assessment. At the time the garnishment

actions were instituted in 2021, the amount of the special assessment that was collectable was $400.00. During incarceration, Zinnel paid $1408.98 towards his criminal penalties by way of automatic deductions from his prisoner trust account. These funds paid the $400 special assessment and reduced the amount of restitution to $2,512,310.02. During the course of the garnishment actions, the government began making payments towards Zinnel's restitution obligation and agreed to reduce defendant's entire exposure for restitution from the TD Ameritrade accounts and the Castana Trust. After crediting Zinnel for amounts paid by him and offset by payments from the bankruptcy estate, the entire balance requested by the government in the garnishment actions for restitution was $512,047.08. Defendant owed that amount throughout the garnishment and that amount was in fact paid by garnishee Ameritrade to the Clerk of Court for disbursement to the victims of his offenses. Garnishee TD Ameritrade also paid $500,000 to the Clerk of Courts representing the fine imposed. That amount was distributed to the Department of Justice's Crime Victim's Fund. The garnishee also paid to the Department of Justice $150,000.00 for a litigation surcharge. Garnishee TD Ameritrade had paid all funds due and owing in these garnishment actions. United States v. Brumbaugh, 139 F.4th at 1080 - 81.

## ORDER

IT IS ORDERED:

1. Defendant owed criminal monetary penalties for a fine and outstanding restitution at the time this the government sought garnishment.

2. While the garnishment actions were pending, the Attorney General exercised the discretion to apply forfeited moneys to pay all but $512,047.08 of the remaining restitution after crediting Zinnel for payments he made.

3. The United States is entitled to a litigation surcharge in the amount of $150,000.00.

4. Garnishee TD Ameritrade Clearing, Inc. had in its possession funds belonging to defendant Steven Zinnel in an amount exceeding the $1,162,047.08 amount owed by Zinnel. Garnishee TD Ameritrade Clearing, Inc., pursuant to a prior order, paid in 2022

$1,012,047.08 to the Clerk of Courts and $150,000.00 to the United States Department of Justice.

5. The funds paid by garnishee TD Ameritrade Clearing, Inc. represent the total outstanding criminal monetary penalties for fine and restitution then owed by Zinnel, along with the $150,000 litigation surcharge which the district court previously imposed and which this Court has ordered is proper.

6. The garnishment against TD Ameritrade Clearing, Inc. is terminated.

7. The garnishment against the Castana Trust, which action was previously stayed, is terminated.

Dated this 18th day November, 2025.

BY THE COURT:

*[signature]*
CHARLES B. KORNMANN
U.S. DISTRICT JUDGE